**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HASSAN SHAFAQ (A No. 249-391-357),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY CORRECTIONAL FACILITY, et al.,<br><br>Respondents. | Case No. 1:26-cv-00299 JLT SKO<br><br>ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE<br><br>(Doc. 1) |

Before the Court is Hassan Shafaq's petition for writ of habeas corpus brought under 28 U.S.C. § 2241, (Doc. 1), which this Court granted in part on April 6, 2026, based on Petitioner's procedural due process claim. (*See* Doc. 15.) In doing so, this Court ordered a bond hearing and held the substantive due process claim in abeyance pending an outcome on the bond hearing. (*Id.*)

On April 27, 2026, Petitioner informed the Court that the Immigration Judge denied release on bond, finding that Petitioner's lack of work or residence history indicated he was a flight risk and that his proposed sponsor was unreliable. (Doc. 17 at 2–3; Doc. 20-2 at 1.) Petitioner now asks this Court to lift its abeyance of his substantive due process claim and order his immediate release. (Doc. 17 at 3.) On May 7, 2026, Respondents filed a supplemental response, (Doc. 20), and on May 14, 2026, Petitioner filed a reply. (Doc. 21.) Having evaluated the habeas petition (Doc. 1), and the party's briefing on the substantive due process claim, (Docs. 17, 20, 21), the Court **DENIES** the habeas petition and directs the Clerk of Court to close this

1

case.

## I.       FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a thirty-year-old national of Afghanistan who entered the United States unlawfully on September 6, 2024, seeking asylum after fleeing violence in his home country for refusing to observe Sunni religious practices. (Doc. 1 at 2, 5–6.) Upon entry into the United States, Petitioner was immediately apprehended and has been detained ever since. (*Id*. at 6.) Shortly after his arrest, Petitioner was placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1)(A) but was subsequently placed in standard removal proceedings after expressing a fear of returning to Afghanistan and receiving a positive credible fear determination.[1] (*Id*. at 6 n.1.) He then applied for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id*. at 6.) On July 18, 2025, the IJ denied Petitioner's applications for relief and ordered him removed. (*Id*.; *see also* Doc. 20-3 at 134–138.) Petitioner appealed the IJ's order to the Board of Immigration Appeals and on February 4, 2026, the BIA dismissed his appeal and affirmed the IJ's order of removal. (Doc. 20-3 at 160–164.) That same day, Petitioner filed a petition for review with the Ninth Circuit, where the Ninth Circuit issued a temporary stay of removal pending a determination on the merits. (*See* Doc. 20 at 2.) That petition remains pending. (*Id*.)

On January 14, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28

---

[1] The applicable statutory detention authority in this case is 8 U.S.C. § 1225(b)(1), which applies to noncitizen "applicants for admission" initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid entry documents. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under this provision, if a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the inspecting immigration officer "shall refer the [noncitizen] for an interview [with] an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "*shall* be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added). Under the statute, the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3. There is no question that these statutes apply here. The record indicates that Petitioner entered the United States without admission or parole and without valid entry documents, was apprehended by DHS near the border, was ordered removed through expedited removal procedures, claimed fear of returning to Afghanistan, received a positive credible fear determination, and was subsequently placed in standard removal proceedings pending an outcome on his asylum application. (*See* Doc. 1 at 5–6, n.1; Doc. 10-1 at 7–8, 10.) Accordingly, he falls under § 1225(b)(1)(B)(ii)'s mandatory detention provision. *See Doe v. Andrews*, No. 1:25-cv-00333-JLT-HBK, 2026 WL 797694, at *5 (E.D. Cal. Mar. 23, 2026).

U.S.C. § 2241, raising claims of procedural and substantive due process violations. (Doc. 1 at 12–22, 25–26.) On February 17, 2026, Respondents filed a motion to dismiss arguing that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore categorically ineligible for a bond hearing. (Doc. 10 at 1–2.) On March 10, 2026, the assigned Magistrate Judge issued a Finding and Recommendation to grant the habeas petition based on Petitioner's procedural due process claim arising from prolonged detention under § 1225(b)(1)(B)(ii). (Doc. 12 at 3–6.) Specifically, the Magistrate Judge applied the factors enumerated in *Matthews v. Eldridge*, 424 U.S. 319 (1976), and found that Petitioner's then seventeen-month detention without a bond hearing violated the Fifth Amendment. (*Id*. at 4–8.) On April 6, 2026, the undersigned adopted the Findings and Recommendations and ordered Respondents to provide the Petitioner with a bond hearing where the government bore the burden of showing that Petitioner was a flight risk or danger to the community such that continued detention was justified. (Doc. 15.) In doing so, the undersigned held the substantive due process claim in abeyance pending an outcome on the bond hearing and asked for a status update within seven days of the bond hearing. (*Id*. at 2.)

On April 20, 2026, Petitioner received a bond hearing, but the IJ denied release on bond after finding that Petitioner was a flight risk.[2] (Doc. 20 at 2; Doc. 20-2 at 1–2.) Specifically, the IJ acknowledged that DHS bore the burden of proof by clear and convincing evidence and found that "no amount of bond or conditions would secure his future court appearances." (Doc. 20-2 at 1.) Namely, because Petitioner has never worked or lived in the U.S., has no immediate family

---

[2] Petitioner claims that the immigration court failed to adequately notify him of his scheduled bond hearing, and that although his counsel attempted to enter an appearance in the matter, the immigration court failed to process that appearance. (Doc. 17 at 2.) Petitioner explains that he learned of his bond hearing just a few hours before it was set to begin and that as a result, he was unable to secure testimony from his proposed sponsor and community support members to demonstrate he was not a flight risk. (*Id*.) Petitioner further indicates: "Although the IJ acknowledged the government's burden to justify Mr. Shafaq's detention by clear and convincing evidence, she based her decision largely on Mr. Shafaq's supporting evidence, finding it was insufficient to overcome his flight risk." (*Id*.) He claims that the IJ "largely grounded her flight risk finding on Mr. Shafaq's lack of work or residence history in the United States and the adequacy of Mr. Shafaq's proposed sponsor." (*Id*.) To the extent Petitioner attempts to challenge the procedural deficiencies of the bond hearing, he fails to do so explicitly and does not request relief in that regard. (*See* Doc. 17.) Instead, Petitioner only asks for a decision on the substantive due process claim, which he contends entitles him to immediate release. (*Id*. at 3.) Hence, the Court declines to address any arguments regarding the procedural deficiency, if any, of the underlying bond hearing.

3

members in the U.S., and has been detained since his entry into the U.S. (*Id*.) Furthermore, although the IJ considered letters of support from Petitioner's proposed sponsor and affiants, she ultimately found that Petitioner's sponsor was unreliable. (*Id*.) On April 27, 2026, Petitioner filed a status report asking this Court to lift its abeyance of the substantive due process claim and requesting immediate release. (Doc. 17.) On May 7, 2026, Respondents filed a supplemental response, (Doc. 20), and on May 14, 2026, Petitioner filed a reply. (Doc. 21.)

Petitioner has now been detained for approximately twenty-one months. (*See* Doc. 1 at 6.) From September 2024 to August 2025, Petitioner was held at Golden State Annex Detention Facility ("GSA") in Bakersfield, California. (*See* Doc. 1-5 at 3.) While detained at GSA, Petitioner was diagnosed with a right-sided inguinal hernia on May 17, 2025. (*Id*.) On July 3, 2025, Petitioner was evaluated by a general surgery clinic and was scheduled for a pre-operative evaluation on July 22, 2025, and surgery on August 14, 2025. (*Id*.) However, before surgery could be completed, Petitioner was transferred to California City Detention Facility (CCDF) sometime in August 2025, where he currently remains. (*Id*.) His surgery was cancelled and there have been no additional medical records after his transfer to CCDF. (*Id*.) Petitioner indicates that since his transfer to CCDF, he "has been suffering from a hernia . . . , without adequate medical treatment," (Doc. 21 at 6), and has lacked "access to [] prompt, potentially life-saving surgery," which he contends "amounts to punishment and requires his immediate release." (*Id*. at 2.)

## II.   JURISDICTION

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner seeks his immediate release from custody because he contends that his prolonged detention violates his substantive due process rights under the Fifth Amendment. (Doc. 1 at 12–20; Doc. 21 at 2.) Thus, he properly invokes the Court's habeas jurisdiction.

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes

this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," there is no removal order at issue here and the central issue is Petitioner's continued detention. Therefore, this Court has the authority to review Petitioner's habeas petition. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

**III.    ANALYSIS**

   **A. Exhaustion**

Respondents argue that Petitioner should not receive additional relief to the extent that he challenges the IJ's bond determination because he has failed to exhaust his administrative remedies. (Doc. 20 at 4–5.) As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted); *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007).

If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004) (quotation marks and citation omitted).

This Court has previously waived the prudential exhaustion requirement where irreparable harm would result. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823 at *5 n.7 (E.D. Cal. Jan. 29, 2026) (finding that petitioner satisfied irreparable injury *Laing* factor by "demonstrating the irreparable harm that would result from wrongful detention, which may result given the lengthy time it takes to have an appeal decided"); *see also Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307 (E.D. Cal. Mar. 13, 2026). The Court similarly finds that irreparable harm would result here if Petitioner's prolonged detention resulted in a substantive due process violation and therefore waives the exhaustion requirement. *C.A.R.V.*, 2026 WL 241823 at *5 n.7.

**B.  Clarifying the Substantive Due Process Test in the Immigration Habeas Context**

Courts in this circuit have taken various approaches to determine whether an immigration detainee subject to prolonged detention is entitled to relief under the Fifth Amendment's substantive due process clause. *See Doe v. Becerra*, 732 F. Supp. 3d 1071, 1079–81 (N.D. Cal. May 2, 2024) (applying a five-factor test); *Romero-Romero v. Wofford*, No. 1:24-cv-00944-SKO, 2025 WL 391861, at *3, 4–5 (E.D. Cal. Feb. 4, 2025) (declining to apply *Doe's* five-factor test and applying the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319 (1976)), *report and recommendation adopted in full*, 2025 WL 3154399 (E.D. Cal. Nov. 12, 2025); *Espinoza v. Wofford*, No. 1:24-cv-01118-SAB-HC, 2025 WL 1556590, at *7–10, n.7 (E.D. Cal. June 2, 2025) (declining to apply *Doe's* five-factor test and conducting a case-by-case analysis which includes consideration of at least three of the five *Doe* factors); *Doe v. Chestnut*, No. 1:24-cv-00943-EPG-HC, 810 F. Supp. 3d 1169, 1183–84 (E.D. Cal. Nov. 20, 2025) (adopting *Doe's* five-factor test).

Petitioner asks this Court to apply the five-factor test from *Doe v. Becerra*, 732 F. Supp. 3d at 1079–81. (*See* Doc. 1 at 12–20; Doc. 13 at 4–10; Doc. 21 at 2–4.) In *Doe*, the court assessed whether petitioner's prolonged detention under 8 U.S.C. § 1226(c), as a deportable criminal noncitizen, had violated substantive due process. The court analogized to Ninth Circuit caselaw involving detention before criminal trial and civil commitment proceedings. *Id.* at 1079–80. The court explained that "detention violates due process if it becomes punitive," such as when detention "become[s] excessively prolonged," or when "conditions of detention are too harsh." *Id.*

at 1079. In assessing relevant Ninth Circuit authority, the court identified five factors to decide whether petitioner's continued detention under Section 1226(c) violates substantive due process. *Id*. at 1080–81 (citing *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) and *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004)).[3] Those five factors include: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. *Doe v. Becerra*, 732 F. Supp. 3d 1080.

Though Petitioner notes that a judge in this district recently adopted the five-factor test in *Doe v. Chestnut*, 810 F. Supp. 3d at 1183–84, other judges in this district have declined to adopt that same test. (Doc. 21 at 3); *see Romero-Romero*, 2025 WL 391861, at *4–5; *Espinoza*, 2025 WL 1556590, at *7 n.7. Further, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011). Additionally, all four cases assessing substantive due process have done so in the context of prolonged detention under 8 U.S.C. § 1226(c), not 8 U.S.C. § 1225(b)(1) as applied to the Petitioner in this case. (*See* Doc. 1 at 6 n. 1); *cf. Doe v. Becerra*, 732 F. Supp. 3d at 1076; *Doe v. Chestnut*, 810 F. Supp. 3d at 1175; *Romero-Romero*, 2025 WL 391861, at *1; *Espinoza*, 2025 WL 1556590, at *1, 5.

---

[3] The court explained: "These five factors come from Ninth Circuit cases regarding detention before criminal trial and civil commitment proceedings. As the Court previously summarized: In the context of detention before criminal trial, the Ninth Circuit weighs several factors in considering whether detention has crossed the line from regulatory to punitive. These include '(1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act.' *Torres*, 995 F.3d at 708. In the context of detention before involuntary civil commitment proceedings, the Ninth Circuit has explained that even if not intended to punish, detention is punitive and violates substantive due process 'where it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.' *Jones*, 393 F.3d at 934 (cleaned up). Moreover, 'a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held.' *Id*." *Doe v. Becerra*, 732 F. Supp. 3d at 1080–81.

Confronted with this issue for the first time, this Court adopts a modified version of *Doe's* five factor test best reflected in *Espinoza*, 2025 WL 1556590, at *7–11.[4] This test involves a case-by-case analysis of the (1) length of detention and whether it is excessive in relation to its regulatory purpose; (2) evidence supporting the determination that detention is warranted to prevent flight risk or community danger; and (3) conditions of confinement.[5] *Id*. In *Espinoza*, although the Court "decline[d] to apply the five-factor balancing test fashioned in *Doe*" the Court nonetheless considered at least three of the five factors. *See Espinoza*, 2025 WL 1556590, at * 7 n.7, 8–10 (reviewing evidence of flight risk, assessing whether petitioner's conditions of confinement were punitive, and assessing the length of detention).

As to the second factor (e.g., evidence of flight risk or danger), the Court clarifies the

[4] Though *Romero-Romero* purports to apply the three-factor *Mathews* test to a *substantive* due process claim of prolonged detention under 8 U.S.C. § 1226(c) in deciding whether to grant an additional bond hearing, courts typically apply this test when deciding whether *procedural* due process entitles a petitioner to a second or additional bond hearing. *See Romero-Romero*, 2025 WL 391861, at *3, 4–5 (explaining that petitioner has had multiple individualized bond reviews where it was determined he presented a danger to the public and/or a flight risk); *Lopez v. Garland*, 631 F. Supp. 3d 870, 877–879 (E.D. Cal. 2022) (explaining that in deciding whether to apply the *Mathews* test in the context of *procedural* due process, some district courts have found the determining factor to be whether the petitioner is requesting an initial bond hearing versus a second bond hearing); *Flores Jimenez v. Andrews*, No. 1:25-cv-01104-KES-HBK, 2026 WL 1040948, at *1, 3–5 (E.D. Cal. Apr. 16, 2026) (applying the *Mathews* test to a *procedural* due process claim of prolonged detention under § 1226(c) to determine whether petitioner was entitled to a second bond hearing nearly three years after the first bond hearing); *Valenzuela v. Warden*, No. 1:26-cv-01249-DJC-SCR, 2026 WL 901337, at *2, 3–5 (E.D. Cal. Apr. 2, 2026) (applying the *Mathews* test to determine whether *procedural* due process required a third bond hearing), *report and recommendation adopted in full*, 2026 WL 1068588, at *1 (E.D. Cal. Apr. 20, 2026). In sum, the Court declines to apply such test here as Petitioner brings a *substantive* due process claim.

[5] Regarding *Doe's* fourth factor (e.g., consideration of "alternatives to detention that are less harsh"), *see Doe*, 732 F. Supp. 3d at 1080, the Court in *Espinoza* explained that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process" and "when the [g]overnment deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Espinoza*, 2025 WL 1556590, at *9 (citing *Demore v. Kim*, 538 U.S. 510, 523, 528 (2003)). The Court found that "the pertinent question for purposes of substantive due process is not whether the government's purpose can be achieved through less harsh alternatives to physical custody, but whether [p]etitioner is being subjected to conditions of confinement that are punitive." *Id*. (quotations and citations omitted). The Court agrees and adopts a similar test here. As this Court clarified in *Romero-Romero*, "for purposes of substantive due process, alternatives to detention do not obviate the regulatory purposes and goals served by detention and mitigate dangerousness [and flight risk] given the facts and circumstances of [any particular] case." *Romero-Romero*, 2025 WL 3154399, at *1; *see also Jones*, 393 F.3d at 931 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)) (requiring that "the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed").

appropriate standard of review when the case, as here, involves reviewing the IJ's flight risk and/or danger determinations. *See Espinoza*, 2025 WL 1556590, at *8 (reviewing the IJ's bond determination which denied release upon finding that petitioner was a flight risk); *Doe v. Becerra*, 732 F. Supp. 3d at 1085–86 ("The first issue the [c]ourt must address is whether it has jurisdiction to consider the evidence relating to [petitioner's] flight risk or danger, which necessarily overlaps with the evidence considered by the immigration judge at the bond hearing."). *Doe* characterized the issue as "involv[ing] a different test derived from constitutional rather than statutory standards" and that "the question is not whether detention is warranted in the abstract or whether release is appropriate as a matter of discretion, but whether the duration of [petitioner's] detention has become excessively prolonged given the government's interests and the conditions of confinement." *Doe v. Becerra*, 732 F. Supp. 3d at 1086. Relying on this discussion, *Doe v. Chestnut* stated: "This Court is not bound by the IJ's determinations . . . and this Court is not reviewing the IJ's determinations under the abuse of discretion standard . . . . Rather, this Court is making an independent assessment of [p]etitioner's dangerousness and flight risk in the context of [p]etitioner's substantive due process claim." 810 F. Supp. 3d at 1186 (citations omitted).

However, the Court disagrees with this characterization of review. In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id*. (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence . . . review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-cv-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. 2021). To the extent this substantive due process test requires review of an IJ's determinations of flight risk or danger, this Court adopts this standard of review.

As to the third factor (e.g., conditions of confinement), the Court further clarifies a series of threshold issues. While there is "a presumption of punitive conditions . . . where [a civil detainee] is detained under conditions identical to, similar to, or more restrictive than those under

which pretrial criminal detainees are held," *see Jones*, 393 F.3d at 934, Petitioner fails to provide authority that such presumption extends to the immigration context. (*See* Doc. 1 at 13); *Romero-Romero*, 2025 WL 3154399, at \*1 ("Petitioner has not provided authority that the presumption of punitive conditions raised by comparative carceral conditions extends to the immigration context."); *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 649 (9th Cir. 2021) ("The record lacks evidence from which to draw any relevant comparisons between the overall conditions of confinement of ICE detainees as compared to those in criminal custody.").

Moreover, though Respondents cite *Pinson v. Carvajal*, 69 F.4th 1059, 1065 (9th Cir. 2023) to argue that Petitioner's medical conditions of confinement arguments are not redressable through a habeas petition, (Doc. 20 at 4), the Court disagrees for two reasons. First, the Supreme Court has expressly left this question unanswered. *See Ziglar v. Abbasi*, 582 U.S. 120, 144–45 (2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 526, n.6 (1979)) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement."); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal."). In the immigration context, the Ninth Circuit has also expressly left this question unanswered. *See Roman v. Wolf,* 977 F.3d 935, 938, 941–42 (9th Cir. 2020) ("[T]he Government argues that a district court on habeas review may not . . . remedy unconstitutional conditions of confinement. We need not reach that issue . . .").

Second, as the court in *Guillermo M.R.* best explained:

> [T]he government argues that "prisoners may not challenge mere conditions of confinement in habeas corpus." (citations omitted). However, "[a]n action sounds in habeas no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Pinson*, 69 F.4th at 1071 (emphasis in original and citation omitted). *Pinson* leaves open the question of whether a conditions of confinement claim could be brought in a petition for writ of habeas corpus where the conditions render civil detention punitive in a manner that can only be remedied by release. *Id*. at 1075 & n.5 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 144–45 (2017)). However, it is not necessary to reach that question in this case. The Amended Petition challenges not only the conditions

under which [petitioner] is being held, but also [petitioner's] "lengthy confinement" under those conditions. (citations omitted). [Petitioner's] substantive due process claim sounds in habeas.

*Guillermo M.R. v. Albarran, et al.*, No. 25-cv-05436-RFL, 2026 WL 1486580, at *5 (N.D. Cal. May 27, 2026). Similarly, here, Petitioner does not merely challenge his conditions of confinement, but rather challenges his overall detention as prolonged, punitive, divorced from its regulatory purpose, and therefore a due process violation. (*See* Doc. 21 at 2–8).

Courts in this circuit regularly review conditions of confinement on habeas grounds as it relates to a due process claim. *See Doe v. Becerra*, 732 F. Supp. 3d at 1079–80, 1088–89 ("The conditions of confinement also inform whether the duration of detention has become punitive."); *Espinoza*, 2025 WL 1556590, at *9 ("The Court finds that the pertinent question for . . . substantive due process . . . [is] whether [p]etitioner is being subjected to conditions of confinement that are punitive."); *Guillermo M.R.*, 2026 WL 1486580, at *5 ("[Petitioner] has not shown that he is entitled to release based on his substantive due process claim. . . while [petitioner's] inadequate access to medical care is deeply concerning, the facts in the record do not yet rise to the level of a constitutional violation necessitating [petitioner's] release."); *Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1220–22 (W.D. Wash. 2026) (applying a multi-factor test enumerated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019), which considers conditions of confinement, to assess whether procedural due process requires a bond hearing).

Therefore, the Court considers Petitioner's conditions of confinement in so far as they relate to his substantive due process claim that his detention has become punitive. *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) ("A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose.") (citations omitted).

**C. Applying the Substantive Due Process Test**

1. Length of Detention and Whether It Is Excessive in Relation to Its Regulatory Purpose

First, the length of detention in relation to the government's regulatory purpose does not weigh in Petitioner's favor. In the context of criminal pretrial detention, the Ninth Circuit has observed that "at some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." *Torres*, 995 F.3d at 708 (citations omitted). *Torres* held that Petitioner's twenty-one month detention due to the pandemic and related courthouse closures did not violate due process, but "caution[ed] that the length of Torres's detention is approaching the limits of what due process can tolerate" and that "at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried." *Id*. at 709, 710 (citations omitted). Further, in the immigration detention context, the Ninth Circuit has upheld detention that lasted forty-one months and would continue while the petitioner's petition for review was pending in the Ninth Circuit. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1056–57, 1062–65 (9th Cir. 2008) (explaining that from February 2005 until July 2008 petitioner had remained in continuous custody of DHS, and had received a series of bond hearings throughout his detention, while he awaited a decision by the BIA and Ninth Circuit on his underlying immigration merits, and finding that his continued detention was constitutional).

Here, Petitioner has been detained since September 6, 2024, and recently received a bond hearing on April 20, 2026, less than two months ago. (*See* Doc. 1 at 6; Doc. 21 at 4; Doc. 20-2 at 1.) Petitioner's detention of twenty-one months is not excessively prolonged to find a substantive due process violation. *See Torres*, 995 F.3d at 708 (upholding a criminal pretrial detainee's twenty-one-month detention period as constitutional); *Prieto-Romero*, 534 F.3d at 1056 (upholding an immigration detainee's forty-one-month detention under 8 U.S.C. § 1226(a), with at least three intervening bond hearings, as constitutional); *Espinoza*, 2025 WL 1556590, at *10 (upholding an immigration detainee's thirty month detention under 8 U.S.C. § 1226(c), with at least one intervening bond hearing, as constitutional); *cf. Doe v. Chestnut*, 810 F. Supp. 3d at 1184 (ordering petitioner's immediate release, in part, because he had been detained for fifty-four months which was "double [] twenty-one months" and indicated that detention was punitive vis-à-vis the regulatory purpose).

Further, like *Prieto-Romero*, Petitioner is awaiting Ninth Circuit review of his final order

of removal. (*See* Doc. 20-3 at 160–63; Doc. 20-4, ¶ 7.) As such, he "foreseeably remains *capable* of being removed—even if it has not yet finally been determined that he *should* be removed—and so the government retains an interest in 'assuring [his] presence at removal.'" *Prieto-Romero*, 534 F.3d at 1065 (citing *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)) (emphasis in original). This directly relates to the government's "regulatory purpose for detention—preventing flight risk." *Doe v. Becerra*, 732 F. Supp. 3d at 1083.

Petitioner argues that under *Lopez v. Garland*, 631 F. Supp. 3d 870, 880 (E.D. Cal. 2022), detention exceeding one year is presumed to be unreasonably prolonged. (Doc. 13 at 7.) However, *Lopez* more specifically stated, "'[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" 631 F. Supp. 3d at 880 (citations omitted). *Lopez* dealt with the precise issue of whether petitioner's prolonged detention without an *initial* bond hearing violated procedural due process. *Id*. at 877 n.5. As explained above, Petitioner received a bond hearing less than two months ago. (Doc. 20-2 at 1.) As *Guillermo M.R.* explained, "while the prior period of detention is relevant . . ., it does not rise to the same level of significance as 500 days of continuous immigration detention without a bond hearing." *Guillermo M.R.*, 2026 WL 1486580, at *4; *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) ("[W]e cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."). Thus, this factor does not weigh in favor of Petitioner.

2. Evidence Supporting the Determination that Detention Is Warranted to Prevent Flight Risk or Community Danger

Second, evidence of flight risk does not weigh in Petitioner's favor. In *Demore*, the Supreme Court recognized that detention of deportable noncitizens pending their removal proceedings "necessarily serves the purpose of preventing . . . [flight] prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore v. Kim*, 538 U.S. 510, 528 (2003). Further, "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent."

*Rodriguez Diaz*, 53 F.4th at 1208. Here, the IJ and the BIA have already denied Petitioner's applications for relief. (Doc. 20-3 at 134–38, 160–64.) Petitioner is awaiting review by the Ninth Circuit of those determinations. (Doc. 20-4, ¶ 7.) Naturally, his "time for removal" is much more imminent than someone who is still awaiting an initial IJ determination and therefore, Petitioner's risk of absconding is much more elevated. *Rodriguez Diaz*, 53 F.4th at 1208.

Additionally, the record sufficiently supports the IJ's determination that Petitioner poses a flight risk. (*See* Doc. 20-2 at 1.) The IJ acknowledged DHS's burden by clear and convincing evidence and determined that Petitioner "is a significant flight risk such that no amount of bond or conditions would secure his future court appearances." (*Id.*) The IJ explained that Petitioner posed a flight risk because "has never worked [] in the United States[,] . . . has no immediate family members in the U.S.[,] . . . has no residential history in the U.S.[,] [and] has [] never been out of custody . . . since his entry into the U.S." (*Id.*) In doing so, the IJ relied on *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020), which found that the noncitizen posed a significant flight risk, in part, due to his recent arrival in the U.S., entry without inspection, and lack of family ties, employment history, and community ties. The IJ further considered letters of support submitted by Petitioner's sponsors and friends but ultimately assigned minimal weight as they were not present for cross examination and the sponsor failed to submit relevant income tax records. On this record, the Court cannot find that the IJ abused their discretion or applied an erroneous legal standard. *See Martinez*, 124 F.4th at 784. In sum, the record supports a finding of flight risk.

### 3. Conditions of Confinement

Third, the conditions of confinement do not significantly weigh in Petitioner's favor. "[A] civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." *Jones*, 393 F.3d at 933. "[A] restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to its non-punitive purpose.'" *Id.* at 933–34 (citations omitted). Petitioner claims that he was diagnosed with an inguinal hernia on May 17, 2025, while detained at Golden State Annex, which required surgery. (Doc. 1 at 14; Doc. 1-5 at 3.) He further claims that despite being scheduled for surgery on August 14, 2025, his surgery was cancelled after he was

transferred to California City Detention Facility. (Doc. 1-5 at 3.) Petitioner indicates that since his transfer to CCDF, he "has been suffering from a hernia . . . , without adequate medical treatment," and has lacked access to prompt surgery, which may lead to life threatening injuries. (Doc. 21 at 6.) In support of these claims, Petitioner attaches a letter from Triveni DeFries, M.D., which evaluates Petitioner's medical condition and level of care. (Doc. 1-5 at 3.) That letter indicates that if left untreated, petitioner's herniated abdominal contents may become trapped, and he may compromise blood supply to the entrapped tissue leading to tissue death. (*Id*. at 3–4.) Further, the letter indicates that, if not properly managed, Petitioner hernia could result in bowel obstruction, perforation, sepsis, and even death. (*Id*.) On June 25, 2025, Petitioner developed difficulty walking, which the letter indicates is a very concerning symptom for a relatively healthy young adult. (*Id*.) The record further indicates that Petitioner began to use a wheelchair as early as July 18, 2025, and expressed concerns with access to adequate medical care. (*See* Doc. 20-3 at 146.)

Although Petitioner's inadequate access to medical care is deeply concerning, the facts in the record do not rise to the level of a constitutional violation necessitating Petitioner's immediate release. *See Guillermo M.R.*, 2026 WL 1486580, at *5 (finding that while the letter of support from petitioner's doctor indicating that petitioner's lack of access to medical care at CCDF was causing a plethora of mental and psychological conditions, that was insufficient to show a constitutional violation necessitating petitioner's release). "This is particularly true given that [Petitioner] is a member of a provisionally certified class of persons in CCDF custody bringing claims under the Fifth Amendment related to the conditions at CCDF." *Id*.; *see also Preliminary Injunction and Class Certification Order*, *Ruiz, et al. v. U.S. ICE, et al.*, No. 1:26-cv-02546-JLT-CDB, Dkt. No. 72 (E.D. Cal. Feb. 10, 2026).

The letter submitted by Dr. DeFries is dated December 21, 2025, (*see* Doc. 1-5 at 5), and there is no additional or recent evidence in the record to suggest that Petitioner's conditions have significantly worsened. (*See* Doc. 13 at 5–6; Doc. 21 at 6–7.) While it is unclear why Petitioner's surgery was canceled when he was transferred from GSA to CCDF, there is no explanation or indication in the record for why this may have occurred. (*Id*.) Without more information regarding the current status of Petitioner's medical condition, this Court cannot determine

whether such conditions have become punitive.[6] On balance of all three factors, Petitioner's substantive due process claim fails.

## IV.    CONCLUSION AND ORDER

1.    Petitioner's substantive due process claim raised in his Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

2.    The Clerk of the Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated:    **June 19, 2026**

_UNITED STATES DISTRICT JUDGE_

---

[6] To the extent Petitioner wishes to solely challenge his conditions of confinement, it is unclear whether he can do so through a habeas petition. As *Hernandez v. Lundy* best explained:

> Complaints solely bearing on the conditions of confinement should be raised in a civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Supreme Court has not resolved the question of whether a conditions of confinement claim may be brought in the form of a habeas petition. *See Bell v. Wolfish*, 411 U.S. 520, 526 n.6 (1979) ("Thus, we leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement itself.") In addition, the Ninth Circuit has not decided the issue. *See Nettles v. Grounds*, 830 F.3d 922, 931 [, 931 n.6] (9th Cir. 2016) (holding that if a state prisoner's claim "would not necessarily spell speedier release," it does not lie at "the core of habeas corpus," and must be brought, if at all, under 42 U.S.C. § 1983; but explicitly stating that the Ninth Circuit would not address how this standard "applies to relief sought by prisoners in federal custody"). Thus, Petitioner's standalone claim regarding the conditions of her confinement should be raised in a *Bivens* action.

*Hernandez v. Lundy*, No. 1:25-cv-02007-SKO, 2026 WL 102292, at *6 (E.D. Cal. Jan. 14, 2026).